UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JESSICA S.,

                              Plaintiff,

    v.                                                     6:22-CV-1250 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

PETER W. ANTONOWICZ, ESQ., for Plaintiff
AMANDA J. LOCKSHIN, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

      Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits. This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. No. 5). Both parties filed briefs, which the court treats as motions under Federal Rule of Civil Procedure Rule 12(c), in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

      On August 19, 2019, plaintiff protectively filed an application for Disability Insurance Benefits ("DIB"), alleging disability beginning January 16, 2019.

(Administrative Transcript ("T") 76, 100). Plaintiff's applications were denied initially on November 15, 2019 (T. 101), and upon reconsideration on April 30, 2021 (T. 110). On July 6, 2021, Administrative Law Judge ("ALJ") Bruce S. Fein conducted a hearing during which plaintiff and vocational expert ("VE") Brian Daly testified. (T. 35-66). Plaintiff was represented by attorney Peter Antonowicz during the hearing. (T. 35). On July 22, 2021, the ALJ issued an order denying plaintiff's claim. (T. 13-27). This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on September 23, 2022. (T. 1-3).

## II.     GENERALLY APPLICABLE LAW

### A.     Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial

3

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III. FACTS

Plaintiff was thirty-six years old on the alleged disability onset date.  (T. 25).  She lived in a household with her fiancé, her fiancé's father, and three children.  (T. 39).  She had her own vehicle and drivers license, but testified she cannot drive for forty-five minutes without stopping and getting out to stretch.  (T. 59, 1144).  Her highest level of education was the tenth grade, and she has not completed any vocational training.  (T. 38).  Plaintiff previously worked at a sandwich shop and as an assistant manager of a convenience store.  (T. 255).

Plaintiff testified that she has a "very hard time sitting [and] standing."  (T. 45).  She also testified that she has sharp pains that go from [her] back all the way around to [her] chest."  (T. 45).  She further testified that the pain makes it difficult to concentrate on tasks.  (T. 46).  Plaintiff testified the following medical conditions cause her limitations: herniated disc, pinched nerves, fibromyalgia, spine spurs, scoliosis, arthritis, neuropathy, and severe nerve damage.  (T. 46).

Plaintiff has received approximately eleven injections to various parts of her spine.  (T. 48).  She testified that the lower back injection was helpful but the T9/10 injection "made everything worse."  (T. 48).  Plaintiff testified that she is supposed to undergo spinal surgery, but her doctor would like her to quit smoking before the surgery can occur.  (T. 49-50).  At the time of the hearing, plaintiff was taking Oxycodone and Morphine extended-release medication for pain.  (T. 49).

The ALJ's decision provides a detailed statement of the medical and other evidence of record.  (T. 15-25).  Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

IV.  **THE ALJ'S DECISION**

The ALJ first determined that plaintiff met the insured status requirements for DIB through December 31, 2022.  (T. 15).  The ALJ then found, at step two of the sequential evaluation, that plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 16, 2019.  (*Id.*).  Next, the ALJ found that plaintiff has the following severe impairments: major depressive disorder, generalized anxiety disorder, headaches, cervical spondylosis with radiculopathy, and costochondritis.  (*Id.*).

At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 17).

At step four, the ALJ found that plaintiff had

> [T]he residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: the [plaintiff] could perform all postural limitations on an occasional basis. She should avoid concentrated exposure to excessive noise at the loud or higher level, excessive vibration, and pulmonary irritants such as fumes, odors, gases, dust, and poorly ventilated areas. She should avoid work in a low stress job defined as having only occasional decision-making being required and only occasional changes in the work setting, an only occasional judgment being required on the job.[1]

(T. 19).

In making the RFC determination, the ALJ stated that he considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§] 404.1529" and Social Security Ruling ("SSR") 16-3p. (*Id.*). The ALJ further noted that he considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. [§] 404.1520(c). (*Id.*). After considering plaintiff's statements regarding her symptoms, along with the other evidence of record, the ALJ concluded plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (T. 22). The ALJ also noted that

---

[1] It appears to the court that the ALJ mistakenly added the word "avoid" in this sentence, but neither party has objected to this portion of the RFC. (T. 19).

plaintiff was unable to perform any past relevant work and had a limited education. (T. 25).

Ultimately, the ALJ then determined there were jobs existing in significant numbers in the national economy that someone with plaintiff's age, education, work experience, and residual functional capacity could perform. (T. 25-26). Accordingly, the ALJ ruled that plaintiff was not disabled from the alleged onset date of January 16, 2019, through the date of the ALJ's decision. (T. 26).

V.     ISSUES IN CONTENTION

Plaintiff raises two arguments:

1. The ALJ erred by not finding plaintiff's lumbar spine injury a severe impairment. (Pl.'s Br. at 16-22).

2. The ALJ erred by not finding plaintiff's thoracic spine injury a medically determinable impairment. (Plaintiff's Brief ("Pl.'s Br.") at 14-16) (Dkt. No. 11).

Defendant contends that the Commissioner's determination should be affirmed because it was supported by substantial evidence. (Defendant's Brief ("Def.'s Br.") at 2-10) (Dkt. No. 12). For the reasons stated below, this court agrees with the plaintiff and reverses the Commissioner's decision.

## DISCUSSION

VI.    SEVERE IMPAIRMENT

A.    Legal Standards

The plaintiff bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Rhondalee T. v. Berryhill*, No. 3:17-CV-1241 (CFH), 2019 WL 1100267, at *5 (N.D.N.Y. Mar. 8, 2019) (citing *Taylor v. Astrue*, 32 F. Supp.

3d 253, 265 (N.D.N.Y. 2012)). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R. §§ 404.1522(a), 416.922(a) (noting that an impairment is not severe at step two if it does not significantly limit a plaintiff's ability to do basic work activities).

The regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Monique Danielle W. v. Comm'r of Soc. Sec.*, No. 5:18-CV-184 (DNH), 2019 WL 2358529, at *4 (N.D.N.Y. June 4, 2019) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012)).

"An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Christian H. v. Comm'r of Soc. Sec.*, No. 20-CV-1490, 2022 WL 3648022, at *3 (W.D.N.Y. Aug. 24, 2022) (quoting *Jeffords v. Astrue*, No. 11-CV-620S, 2012 WL 3860800, *3 (W.D.N.Y. Sept. 5, 2012) (citation omitted)). The

8

step two analysis "may do no more than screen out de minimis claims." *Vogt ex rel. Vogt v. Comm'r of Soc. Sec.*, No. 18-CV-231, 2019 WL 4415277, at *4 (W.D.N.Y. Sept. 16, 2019) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)).

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Comm'r of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that the combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523(c), 416.923(c).

### B.     Analysis

Plaintiff alleges "the ALJ did not provide adequate explanation for the decision to exclude the lumbar spine injuries from the severe impairments." (Pl.'s Br. at 17). This court disagrees and finds that the ALJ's step two determination regarding the lumbar spine injury was supported by substantial evidence. *Kurtis M. v. Comm'r of Soc. Sec.*, No. 6:19-CV-603 (ATB), 2020 WL 3100261, at *5 (N.D.N.Y June 11, 2020).

The ALJ concluded the "evidence does not show that her lumbar spondylosis would affect her ability to do basic work activities." (T. 16). To support this conclusion, the ALJ cited to objective medical evidence, an examination by a neurologist, and the consultative examiner's finding. (T. 16). With respect to objective medical evidence, the ALJ cited a lumbar MRI showing "only a small disc herniation at

L5-S1, not resulting in neural compromise" and "unremarkable" lumbar spine X-rays. (T. 16 (citing T. 364, 393-94)). The ALJ noted a neurologist found plaintiff's gait was normal and her lower extremities were within normal limits. (T. 16 (citing T. 467)). Furthermore, the consultative examiner observed plaintiff had a normal gait, but "walked on her heels and toes with difficulty." (T. 16). The ALJ noted "her lumbar spine had reduced range of motion in all planes" but "there were no strength or sensory deficits in the lower extremities." (T. 16).

Because there is substantial evidence in the record to support the ALJ's step two determination with regard to plaintiff's lumbar spine injuries, this court will not disturb his findings. Moreover, because the ALJ did not deny plaintiff's claim at step two of the sequential analysis and considered plaintiff's back pain and the resulting limitations on plaintiff's ability to lift, carry, and perform other work-related tasks as part of his RFC analysis, this court further finds that any error in excluding plaintiff's lumbar spine injuries from the list of severe impairments would be harmless. (T. 19-25).

## VII. MEDICALLY DETERMINABLE IMPAIRMENT

### A. Legal Standards

In order to be found disabled, a plaintiff must show that she is unable to perform any substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. §§ 404.1505(a), 416.905(a). "Consequently, only impairments that are 'medically determinable impairments' can be considered in the disability analysis." *Flower v.*

*Comm'r of Soc. Sec.*, No. 6:16-CV-1084 (GTS), 2018 WL 895579, at *5 (N.D.N.Y. Feb. 13, 2018).

In order to qualify as a medically determinable impairment, an impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical or laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence[2] from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921; §§ 404.1529, 416.929; *Woodard v. Berryhill*, No. 3:17-CV-1124, 2018 WL 3536084, at *4 (D. Conn. July 23, 2018) (internal quotation marks, citations and brackets omitted). Furthermore, the evidence must "show the existence of a medical impairment(s) . . . which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(b), 416.929(b). The existence of a medically determinable impairment is not established by a plaintiff's "statement of symptoms, a diagnosis, or a medical opinion[.]" *Id*. The plaintiff bears the burden of establishing that he or she has a medically determinable impairment. *Woodard v. Berryhill*, 2018 WL 3536084, at *4.

**B. Analysis**

Plaintiff argues that the ALJ erred in omitting plaintiff's thoracic spine injury from consideration at step two of the sequential evaluation process. (Pl.'s Br. at 14-16). In response to this argument, defendant maintains that the ALJ was not obligated to find

---

[2] Objective medical evidence means signs, laboratory findings, or both. Signs mean one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. 20 C.F.R. §§ 404.15n02(f-g), 416.902(f-g).

plaintiff's thoracic spine injury a severe impairment, because the ALJ found "'at least one other severe impairment and continues through the sequence of the disability analyses to consider the non-severe impairments at the RFC stage." (Def.'s Br. at 4). Defendant further argues that plaintiff failed to "assert any specific limitations resulting from her conditions that the ALJ did not incorporate." (*Id.* at 9).

Defendant's argument is misplaced, because the issue here is not whether the ALJ erred in determining the "severity" of plaintiff's thoracic spine injury at step two, but whether the ALJ erred in failing to address plaintiff's thoracic spine injury at all. An error in determining whether an impairment is severe at step two may be harmless if the ALJ identified other severe impairments, proceeded through the remainder of the sequential evaluation, and specifically considered all severe and non-severe impairments during subsequent steps of the process. *See Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013). However, the ALJ's purported error in this case stems from his failure to even consider, much less identify, plaintiff's thoracic spine injury as a medically determinable impairment.

"[T]he step-two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable." *Penny Lou S. v. Comm'r of Soc. Sec.*, No. 2:18-CV-213, 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019). "Th[e] distinction [between an ALJ's determination that an impairment is not severe and his determination that an impairment is not medically determinable] is significant because an ALJ may credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable." *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058, 2019 WL 1109573, at *5 (W.D.N.Y. Mar. 11, 2019) (where the

ALJ's finding that plaintiff's condition was not a medically determinable impairment was not supported by substantial evidence, harmless error analysis did not apply and remand was warranted); *see also Lauren A. v. Saul*, No. 8:18-CV-0244 (TWD), 2019 WL 4242248, at *7 (N.D.N.Y. Sept. 6, 2019) (ALJ's failure to find impairment medically determinable was not harmless and warranted remand); *Childs v. Colvin*, No. 1:14-CV-462, 2016 WL 1127801, at *3-4 (W.D.N.Y. Mar. 23, 2016) (ALJ's failure to find plaintiff's schizoaffective disorder was a medically determinable impairment "constituted reversible error, because a full consideration of plaintiff's disorder could have affected the outcome of her application"); *Showers v. Colvin*, No. 3:13-CV-1147 (GLS/ESH), 2015 WL 1383819, *8 (N.D.N.Y. Mar. 25, 2015) ("Since [the ALJ] found that Showers's claimed personality disorder, depression and anxiety were not medically-determinable abnormalities rising to the level of impairments, functional limitations attributable thereto were never considered at subsequent steps or when formulating Showers's residual functional capacity."). Where an impairment is excluded at step two and the ALJ fails to account for functional limitations associated with the impairment in determining the plaintiff's RFC, remand for further proceedings is appropriate. *See Fontanez v. Colvin*, No. 16-CV-1300, 2017 WL 4334127, at *15 (E.D.N.Y. September 28, 2017) (internal citation omitted) (finding the ALJ's failure to acknowledge or discuss the plaintiff's neck pain at step two or anywhere in the decision was not harmless error and remand was warranted).

 As previously noted, the ALJ found that plaintiff's major depressive disorder, generalized anxiety disorder, headaches, cervical spondylosis with radiculopathy, and costochondritis were all severe medically determinable impairments which significantly

13

limited plaintiff's ability to perform basic work activities. (T. 15). The ALJ did not provide any explanation for his conclusion or justification for the omission of plaintiff's thoracic spine injury in his step two analysis. (T. 16-17).

The ALJ's failure to identify plaintiff's thoracic spine injury as a medically determinable impairment at step two is at odds with plaintiff's well-documented diagnosis for this condition, as reflected throughout the administrative record. Plaintiff claimed disability based, in part, on her back disorder in her initial application for benefits. (T. 100). Plaintiff mentioned many medical conditions connected to her thoracic spine injury during the hearing. (T. 46). Plaintiff specifically mentioned herniated discs, pinched nerves, and spine spurs. (*Id.*).

Moreover, plaintiff's treatment records are replete with references to her thoracic spine injury. On August 1, 2019, plaintiff completed an MRI scan of her thoracic spine. (T. 580). While the thoracic spine demonstrated normal alignment, there was "mild spurring at the mid to lower thoracic spine." (*Id.*). Additionally, there was disc herniation and "minimal canal stenosis" at T5/6 and T9/10. (*Id.*). On multiple occasions, plaintiff has exhibited tenderness in T5-6 and T9-10 and severely tender palpation of the left rib cage from T4 to T10. (T. 562-63, 574, 853, 857-58, 862, 866-67, 871). Plaintiff has received multiple interlaminar epidural injections to her thoracic spine region. (T. 876-77).

The court's inability to determine whether plaintiff suffered from additional limitations stemming from her thoracic spine injury is compounded by the absence of plaintiff's complete treatment record from plaintiff's physical therapy. Plaintiff underwent physical therapy for an "insidious onset of thoracic pain" that had not

14

improved since its onset in January of 2019. (T. 810-19). The administrative record includes three of the physical therapy notes from plaintiff's visits, but not the other eight notes. (T. 810-19). Clearly, there are additional medical records relative to plaintiff's treatment for her thoracic spine injury that are missing from the record, without which this court will not presume that the ALJ's conclusion at step two was supported by substantial evidence. *See Morshed v. Comm'r of Soc. Sec.*, No. 19-CV-725, 2020 WL 5814655, at *6 (W.D.N.Y. Sept. 30, 2020) ("In light of the ALJ's failure to evaluate the medical evidence of [plaintiff's] headaches and migraines, the [c]ourt has no basis to evaluate whether the ALJ properly excluded the migraines as a severe physical impairment or sufficiently considered the related limitations in the RFC analysis."); *McGlothin v. Berryhill*, No. 1:17-CV-00776, 2019 WL 1499140, at *4 (W.D.N.Y. Apr. 4, 2019) ("Since the [c]ourt cannot 'confidently conclude that the same result would have been reached absent the [step two error,]' the [c]ourt cannot say the error was harmless.") (internal citations omitted).

Furthermore, the evidence cited above is inconsistent with the ALJ's finding that plaintiff's thoracic spine injury did not rise to the level of a medically determinable impairment. The ALJ failed to include any explanation for why he did not include the thoracic spine injury at step two, despite the evidence of record. Accordingly, remand is warranted because the ALJ's error impacted the subsequent steps of the disability determination process. Once plaintiff's thoracic spine injury was omitted from the list of plaintiff's medically determinable impairments, the ALJ was not required to consider it in determining plaintiff's RFC. *See Booker v. Astrue*, No. 1:07-CV-646 (GLS), 2011 WL 3735808, at *5 (N.D.N.Y. Aug. 24, 2011) (the absence of any explanation or

specific finding regarding the plaintiff's left foot condition was "error significant enough to defeat meaningful review at step two and, consequently, each successive step.").

Accordingly, this matter should be remanded in order for the ALJ to examine, inter alia, whether plaintiff's thoracic spine injury is a medically determinable impairment, whether it is severe or non-severe in nature, and the limiting effects it may have on her RFC.  The ALJ should further develop the record to ensure that it contains plaintiff's complete, relevant thoracic spine injury treatment history.  The court does not address the plaintiff's remaining arguments "because, after evaluating the medical and diagnostic evidence and applying the de minimis standard," the ALJ may come to an alternative conclusion at step two, and consequently incorporate his findings into the remaining steps in the evaluation process. *Burgos v. Berryhill*, No. 3:16-CV-1764, 2018 WL 1182175, at *3 (D. Conn. Mar. 7, 2018).  The court's directions on remand do not include reconsideration of whether the plaintiff's lumbar spondylosis constitutes a severe impairment.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. Nos. 11, 13) be **GRANTED**; and it is further

**ORDERED**, that defendant's motion for judgment on the pleadings (Dkt. No. 12) be **DENIED**; and it is further

**ORDERED**, that the decision of the Commissioner be **REVERSED**, and this action be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum-Decision and Order.

Dated: August 21, 2023

*Andrew T. Baxter*
Andrew T. Baxter
U.S. Magistrate Judge